**HERSHEY CHOCOLATE CO. v. McCAUGHN, Internal Revenue Collector, and fifteen other cases.**

**Nos. 4157–4172.**

Circuit Court of Appeals, Third Circuit. June 6, 1930.

F. Lyman Windolph, of Lancaster, Pa., Wm. Clarke Mason, of Philadelphia, Pa., and John E. Snyder, of Lancaster, Pa., for appellant Hershey Chocolate Co.

S. V. Hosterman, of Lancaster, Pa., and Wm. Clarke Mason and C. J. Hepburn, both of Philadelphia, Pa., for appellant Klein Chocolate Co.

A. Allen Woodruff and Wm. Clarke Mason, both of Philadelphia, Pa., for appellant Wilbur-Suchard Chocolate Co.

D. F. Magee, of Lancaster, Pa., and Wm. Clarke Mason, of Philadelphia, Pa., for appellant York Chocolate Co.

Calvin S. Boyer, Acting U. S. Atty., and Mark Thatcher, Asst. U. S. Atty., both of Philadelphia, Pa., and Richard W. Wilson and Harrison F. McConnell, Sp. Attys., Bureau of Internal Revenue, both of Washington, D. C., for appellees.

Before WOOLLEY and DAVIS, Circuit Judges, and AVIS, District Judge.

AVIS, District Judge.

These cases were all tried in the District Court at one time; one opinion was rendered in all of the cases, and, although brought into this court by separate appeals, were heard in one argument.

·Appellants are all manufacturers of sweet chocolate and sweet milk chocolate, the product of the cacao bean, and made certain payments of amounts alleged to be due the government as taxes, under the Revenue Acts of 1918 and 1921 and the regulations of the Internal Revenue Commissioner. All of said payments were made "under protest," and later, at different and sundry times, appellants filed claims for refund with the collectors of internal revenue, in the various districts in which payments had been made, for transmission to the Commissioner of Internal Revenue. All of said claims for refund were rejected by the Commissioner, and the suits followed.

The District Court, sitting without a jury, heard the testimony, held that the tax was lawfully imposed, and caused judgments to be entered in favor of the defendants, and from these judgments all of the cases are. brought by appeal to this court.

Twenty-nine assignments of error were filed, and relied upon by the appellants, but as a matter of fact.they are all merged in one question to be decided, i. e., Does the.word "candy" in the Revenue Act of 1918 (title 9, § 900(9), 40 Stat. 1122), and the Revenue Act of 1921 (title 9, § 900(6), 42 Stat. 292),. include sweet chocolate and/or sweet milk chocolate?

The portion of the act of 1918 under which the tax was assessed and paid, reads as follows:

"That there shall be levied, assessed, collected, and paid upon the following articles sold or leased by the manufacturer, producer, or importer, a tax equivalent to the following percentages of the price for which so sold or leased—* * *

"(9) Candy, 5 per centum. * * *" 40 Stat. c. 18, pp. 1057, 1122.

The act of 1921 reads exactly the same, with the exception that the percentage of tax is placed at 3 per cent. instead of 5.

The decision of this question rests upon:

(1) The definition of the word "candy."

(2) Whether or not sweet chocolate and sweet milk chocolate is candy in accordance with its commonly accepted use?

(3) Did Congress intend to include sweet chocolate and sweet milk chocolate under the term "candy" in the Revenue Acts?

(4) Was the regulation of the Commissioner of Internal Revenue conclusive, and did he have authority, under the acts, to include sweet chocolate and sweet milk chocolate under the term "candy"?

(5) Do the classifications promulgated by the Secretary of Agriculture, under the Pure Food Laws, in any way affect the question of the legality of the tax imposed?

Under the evidence in this case, it is rather difficult to define the word "candy." There is nothing in the testimony, outside of the technical definitions, and possibly the classifications promulgated by the Secretary of Agriculture, to assist the court in arriving at a conclusion as to the inclusiveness of the word. Webster defines candy as follows:

"A more or less solid preparation made by boiling sugar or molasses to the desired consistency, and then crystallizing, molding, or working it into the required shape. It is usually flavored or colored, and often contains fruit, nuts, etc. Also, any sweetmeat made of, or coated with, a preparation of sugar or molasses; a piece of confectionery."

The evolution of the use of sweetmeats in modern times may have, and probably has, extended the meaning of the word to other articles than those strictly included in the definition given by Webster.

Counsel for appellants argue that the classification by the Secretary of Agriculture, under the Pure Food Laws and under authority given by Congress, indicates that sweet chocolate and sweet milk chocolate are not included within the designation of "candy."

It is true that, in this classification, candy and chocolate, both "sweet" and "sweet milk," are under separate heads, and it is apparent that, for purposes of the statute under which this classification was made, it was undoubtedly treated under separate headings, but this may not be conclusive in construing the Revenue Acts under which this suit was brought. Whether or not "candy" in its technical sense, includes sweet chocolate and/or sweet milk chocolate, we do not deem it necessary to decide, in view of our conclusions, hereinafter set forth, with relation to the intention of Congress when the Revenue Acts of 1918 and 1921 were enacted.

The court below said, with relation to the word "candy" as it applies to sweet chocoate and sweet milk chocolate:

"It is a word of every day household use and, taken in its ordinary popular sense, I think that it includes the plaintiff's products in the forms in which this tax has been collected upon them. Probably nine people out of ten would say unhesitatingly that it did, and to my mind a definition which narrows it so as to exclude the plaintiff's product is not a natural one."

This statement of the court, which is made without any testimony to sustain it, and upon which the court very naturally relied in forming its opinion, it seems to us, may be without foundation in fact. It is entirely a matter of personal opinion, and we are not so sure that an actual investigation would sustain the conclusion. While some people might look upon it as candy, we feel that many would call it a food, and, in the absence of anything in the record tending to show that this is the popular opinion, we cannot sustain the judgment of the court on this theory.

We are satisfied that the decision in this case rests primarily upon the action and intent of Congress in the enactment of the laws under which the tax was levied and collected, and this intent must necessarily be gathered from the prior laws in which different articles are classified for taxing purposes, and the proceedings preliminary to the enactment of the Revenue Acts of 1918 and 1921.

In all of the Tariff and Internal Revenue Acts of Congress from 1792 to 1913, candy, generally called "sugar candy," and chocolate and other products of the cacao bean, were separately classified. Chocolate has always, in the various acts, been referred to and taxed under an individual heading, indicating that Congress construed it to be a separate and distinct product for taxing purposes.

The Revenue Act of 1918 was being considered by Congress during the World War, at a time when there was much agitation as to the food value of chocolate and, when it was asserted that chocolate was a concentrated food, used by the enlisted men of the United States Army and others. This may or may not have had its effect upon the members of Congress.

The fact that Congress omitted to include chocolate in the 1918 act, taken in conjunction with the fact that it was specifically included in prior legislation, and was never before, either in congressional enactments or by executive regulation, included in the term

"candy," is convincing proof of the intention of Congress to place no tax upon sweet chocolate or sweet milk chocolate in the 1918 Revenue Act.

The act of 1921 contains no reference to sweet chocolate or sweet milk chocolate eo nomine, notwithstanding the fact that the regulations of the Commissioner, classifying both as "candy," under the 1918 act, and that the District Court decision in Massachusetts holding they were not taxable, was before the committee and Congress at the time of the consideration of the bill.

It has been held in a number of cases that the intention of Congress, in revenue and import statutes, may be, and should be, determined by the manner in which the same articles were treated in former acts. Mr. J. Nelson, in delivering the opinion of the Supreme Court in the case of De Forest et al. v. Lawrence, 54 U. S. (13 How.) 274, 282, 14 L. Ed. 143, said:

"And, although it has been invoiced, and is known in trade and commerce, by the designation of sheepskin raw, and dried, and may, generally speaking, be properly ranged under the denomination of skins, as a class; yet, having a known designation in the revenue acts, distinct from the general class to which it might otherwise be assigned, we must regard the article in the light in which it is viewed by these acts, rather than in trade and commerce. For, when Congress, in legislating on the subject of duties, has described an article so as to identify it by a given designation for revenue purposes, and this has been so long continued as to impress on it a particular designation as an article of import, then it must be treated as a distinct article, whether there be evidence that it is so known in commerce or not. It must be taken as thus known in the sense of the revenue laws, by reason of the legal designation given to it, and by which it has been known and practised on at the custom-house.

"It is but fair to presume, after having been treated by the law-makers for a considerable length of time as an article known by this designation, with a view to the assessment of the rate of duty upon it, that, if intended to be charged specifically, or by enumeration, the designation by which it was known to them would have been used, instead of the one known to trade and commerce, if that should be different."

In Reiche v. Smythe, 80 U. S. (13 Wall.) 162, 165, 20 L. Ed. 566, it was held:

"Congress having, therefore, defined the word in one act, so as to limit its application,

how can it be contended that the definition shall be enlarged in the next act on the same subject, when there is no language used indicating an intention to produce such a result? Both acts are in pari materia, and it will be presumed that if the same word be used in both, and a special meaning were given it in the first act, that it was intended it should receive the same interpretation in the latter act, in the absence of anything to show a contrary intention."

The effect of the distinction recognized by Congress is very aptly referred to in the case of Arthur v. Stephani, 96 U. S. 125, 127, 128, 24 L. Ed. 771, wherein the court, among other things, said:

"Should it be admitted, therefore, that chocolate is composed in part of the same substances that enter into the composition of ordinary confectionery, it must, nevertheless, stand upon the customs list as the distinct article so often described in the acts of Congress by its specific name. * * *

"Contemporaneously and side by side, all the way down, the statutes provide for different rates of duty on the varieties of sugar and on confectionery, as well as on chocolate. Confectionery and chocolate are uniformly recognized as being different articles for the purpose of duties. * * *

"It is quite evident that Congress has at all times intended to preserve the distinction between these articles, and that the circuit judge decided correctly when he held that chocolate, although in the form and of the character, described was not dutiable as 'confectionery' under the act of 1864."

This rule, so clearly stated, it appears to us, applies in full force to the facts presented in the case sub judice.

This is further demonstrated by an examination of the record of deliberations and discussions in the committees; and also upon the floor of the Senate, when the 1921 act was under consideration, which are corroborative of the facts upon which our conclusions are based.

An examination of the evidence offered in this regard discloses that a Mr. Fuller, apparently a candy manufacturer, called the attention of the Senate committee to a decision in the United States court, district of Massachusetts, holding that chocolate was not candy, and not taxable under the 1918 act, and that some provision should be made in the 1921 act to put chocolate upon the same basis as candy, either by removing the tax from candy, or inferentially to impose a

similar tax on chocolate. Similar representations were made to the House Ways and Means Committee; and the question was discussed quite fully on the floor of the Senate; the understanding, apparently at that time, being that the word "candy," in the Revenue Act of 1918, did not include sweet chocolate or sweet milk chocolate.

In addition to this, while the House Ways and Means Committee was considering the bill which culminated in the Revenue Act of 1921, the Secretary of the Treasury submitted to the Committee a definition of the word "candy," which included sweet chocolate and sweet milk chocolate, but with the suggestion that the statement of this definition might be incorporated in the law, which was not included in the act when finally passed. This definition, so submitted and not included, was in the same language as contained in the classification subsequently promulgated by the Secretary of the Treasury, under the right conferred by the statute to make regulations, and under which a portion of the tax was levied and collected in these cases.

The deliberations of the committees and the facts produced before them when considering the bill appear to be legal evidence, and should be given its due weight. Holy Trinity Church v. United States, 143 U. S. 457, 464, 12 S. Ct. 511, 36 L. Ed. 226; Binns v. United States, 194 U. S. 486, 495, 24 S. Ct. 816, 48 L. Ed. 1087.

In spite of the knowledge of the Representatives and Senators in Congress, no definite tax was levied on sweet chocolate or sweet milk chocolate; and, from the manner in which Congress has always treated this subject, and in view of the special knowledge it had prior to the passage of the 1921 act, we are satisfied that Congress did not intend to include either of these products in the Revenue Acts of 1918 or 1921.

■ In both the Revenue Acts of 1918 (40 Stat. 1143, § 1309) and 1921 (42 Stat. 309, § 1303) the authority of the Commissioner to make needful rules and regulations, with the approval of the Secretary, is in the following language:

"That the Commissioner, with the approval of the Secretary, is hereby authorized to make all needful rules and regulations for the enforcement of the provisions of this act."

It will be noted in this statute that it provides for "rules and regulations" which shall be "for the enforcement of the provisions of this act."

The question involved on this phase of the case rests somewhat upon a construction of the statutes. Certainly the Commissioner and/or the Secretary have no authority to make law; this power rests in Congress, unless some ambiguity exists, and the regulation is reasonably in accordance with the statute.

In the case of Morrill v. Jones, 106 U. S. 466, 467, 1 S. Ct. 423, 424, 27 L. Ed. 267, Chief Justice Waite said: "The secretary of the treasury cannot by his regulations alter or amend a revenue law. All he can do is to regulate the mode of proceeding to carry into effect what congress has enacted." See, also, United States v. United Verde Copper Co., 196 U. S. 207, 25 S. Ct. 222, 49 L. Ed. 449.

■ A regulation of an executive department construing a statute is given great weight, and is strongly persuasive, and has the force and effect of law, if made in pursuance of statutory authority, but Congress alone has the power to lay taxes. See Burk-Waggoner Oil Ass'n v. Hopkins (N. D. Tex.) 296 F. 492, and cases cited.

■ Taking into consideration, the reading of the statute, the prior attitude of Congress with relation to imposition of taxes on chocolate, and the fact that the matter was considered and discussed in committee and on the floor of the Senate before the passage of the act of 1921, to the extent that the actual regulation defining "candy," afterward promulgated by the Commissioner and the Secretary, was submitted to the committee considering the bill, we are convinced that there was no ambiguity in the statutes which permitted or authorized the regulations imposing the tax on sweet chocolate or sweet milk chocolate, in the manner or to the extent contended for by the defendant appellee.

We therefore hold that the imposition of the tax upon the product of appellants was not authorized by the regulation of the Commissioner, approved by the Secretary.

■ It is contended by the appellants that the classifications of the Secretary of Agriculture, promulgated under the Pure Food Laws, conclusively define chocolate as a product which could not be included under the term "candy," which is also classified in these regulations. These classifications were made under laws relating to pure foods, and, while they might have some effect upon the establishment of the general definition of the respective products, we cannot see that they are in any way controlling on the main questions at issue in these cases.

The case of Malley v. Walter Baker & Co. (C. C. A. 1) 281 F. 41, is strongly relied upon by the appellee; it being the contention that this case is controlling as establishing a precedent which in effect should be followed. There is a marked difference in the facts as submitted in the two cases. In the Malley Case there was no decision upon the question of what Congress intended to do, except from the construction of the statutes, and it is apparent that no evidence with relation to the prior attitude of Congress, or the proceedings of the committees of Congress in consideration of the bills, was submitted to the court considering that case. We are not able to follow that court in its inclusion of sweet chocolate and sweet milk chocolate in the technical definition of the word "candy," or in its conclusion that the Commissioner, with the approval of the Secretary, had the power and authority under the respective revenue laws to substitute his ruling for the plain action of Congress.

The judgments of the District Court are reversed, and the cases remanded for new trials or other lawful proceedings in conformity with this opinion.