## TAPLIN v. COMMISSIONER OF INTERNAL REVENUE (two cases).

## KING v. COMMISSIONER OF INTERNAL REVENUE.

### Nos. 5442–5444.

Circuit Court of Appeals, Sixth Circuit.

June 12, 1930.

H. H. Hoppe, of Cleveland, Ohio (C. F. Taplin and Taplin & Fillius, all of Cleveland, Ohio, on the brief), for appellants.

Norman D. Keller, of Washington, D. C. (G. A. Youngquist, Asst. Atty. Gen., and Sewall Key, C. M. Charest, and Prew Savoy, all of Washington, D. C., on the brief), for appellee.

Before DENISON and HICKS, Circuit Judges, and COCHRAN, District Judge.

HICKS, Circuit Judge.

Separate petitions by three taxpayers to review the decision of the Board of Tax Appeals affirming the action of the Commissioner of Internal Revenue in assessing deficiencies in income taxes for the year 1920, on redetermination, against each petitioner. The cases were consolidated for hearing both before the Board and here.

Standard Island Creek Coal Company, herein called the Standard Company, had a capital of $600,000 par value, divided into 6,000 shares. On October 30, 1920, the Cleveland & Western Coal Company, herein called the Cleveland Company, owned 5,400 of these shares. The amounts paid therefor, and the dates on which they were purchased, are as follows:

| May, | 1917 | 3,850 shares | $ | 0.00 |
|---|---|---|---|---|
| December 12, | 1918 | 250 shares | | 310.00 |
| March 30, | 1920 | 100 shares at $20 per share | | 2,000.00 |
| April 21, | 1920 | 45 shares at $21 per share | | 945.00 |
| April 30, | 1920 | 5 shares at $21 per share | | 105.00 |
| July 9, | 1920 | 847 shares at $30 per share | | 25,410.00 |
| July 26, | 1920 | 103 shares at $30 per share | | 3,090.00 |
| July 29, | 1920 | 100 shares at $30 per share | | 3,000.00 |
| October 30, | 1920 | 100 shares at $30 per share | | 3,000.00 |
| Total | | 5,400 | | $37,860.00 |

On said October 30, 1920, all of this stock was transferred to petitioners at the price of $7 per share or the total sum of $37,860. F. E. Taplin acquired 4,000 shares, C. F. Taplin 734 shares and A. P. King 666 shares. Petitioners were stockholders of the Cleveland Company—F. E. Taplin owning 4,814 shares, C. F. Taplin 1,100 shares, and A. P. King 1,000 shares. The Commissioner found the fair market value of the Standard stock, on October 30, 1920, to be $30 per share and included the difference between this value and the $7 per share paid by petitioners to the Cleveland Company, to wit, $23, in petitioners' gross income as dividends, and upon this basis determined the deficiencies appealed from. Petitioners insist that these transactions with the Cleveland Company constituted bona fide sales of the stock by it to them upon which no taxable income arose. The findings of the Commissioner were prima facie correct, and petitioners therefore carried the burden of convincing the Board of Tax Appeals to the contrary. Botany Mills v. U. S., 278 U. S. 282, 290, 49 S. Ct. 129, 73 L. Ed. 379; Wickwire v. Reinecke, 275 U. S. 101, 105, 48 S. Ct. 43, 72 L. Ed. 184; Austin Co. v. Com'r, 35 F.(2d) 910, 912 (C. C. A. 6).

Upon the record there appears no sufficient reason for not accepting the finding of the Board as to the fair market value of the Standard stock on the date in question, and assuming therefore that this finding was correct, we proceed to consider whether the transfers to petitioners represented dividends. We find no substantial evidence that they did. The Cleveland Company was a "close" corporation. Petitioners, its officers, owned 6,914 out of its 10,000 shares. The remainder was owned as follows: Edith S. Taplin, wife of F. E. Taplin, 1,000 shares; C. F. Taplin, trustee, 500 shares; C. G. Taplin, father of F. E. and C. F. Taplin, 186 shares; and one Todd, an employee of the company, and his wife, 1,400 shares. The transfers to petitioners were in accordance with an arrangement between themselves. The transaction was never authorized or approved by any corporate action. The adverse corporate interest was not represented. Such a deal is subject to severe scrutiny. Twin-Lick Oil Co. v. Marbury, 91 U. S. 587, 23 L. Ed. 328; McGourkey v. Toledo & Ohio Ry. Co., 146 U. S. 536, 13 S. Ct. 170, 36 L. Ed. 1079; Richardson's Ex'r v. Green, 133 U. S. 30, 10 S. Ct. 280, 33 L. Ed. 516. But it was valid until avoided, and no steps were ever taken by minority stockholders to overturn it nor was it questioned from any other source until the determination by the Commissioner that the difference between the amount paid by petitioners for the stock, to wit, $37,860, and the fair market value thereof, $162,000, was in fact a distribution of profits under the guise of a sale; that the sale was only a pretense; that it was not in good faith but was a scheme by petitioners to avoid taxation upon their dividends. This is equivalent to a charge of fraud against the government, and fraud is never presumed. It must be proven by clear and convincing evidence. The Revenue Act of 1918, c. 18, 40 Stat. 1059, § 201 (a) provides that the term, " * * * 'dividend' when used in this title * * * means (1) any distribution made by a corporation * * * to its shareholders or members, whether in cash or in other property * * * out of its earnings or profits accumulated since February 28, 1913. * * * "

The Cleveland Company declared a cash dividend of 8 per cent. in June, 1920, and a further cash dividend of 10 per cent. in December, 1920. These dividends were paid. No other was declared in that year. The record fails to show that any additional "earnings or profits" had "accumulated" out of which dividends could have been paid. None

of this stock was distributed in proportion to the respective stockholdings of petitioners in the Cleveland Company—a condition radically different from that existing in Chattanooga Sav. Bank v. Brewer, 17 F.(2d) 79 (C. C. A. 6); Becker Bros. Co. v. U. S., 7 F.(2d) 3, 5 (C. C. A. 7); Appeal of W. C. Bradley, 1 B. T. A. 111, and Marble & Shattuck Chair Co. v. Com'r, 39 F.(2d) 393, decided by this court April 8, 1930. F. E. Taplin owned approximately 48 per cent. of the Cleveland stock and acquired approximately 74 per cent. of the Standard stock. King owned 10 per cent. of the Cleveland stock and acquired a little more than 12 per cent. of the Standard stock, while C. F. Taplin owned approximately 10¹⁄₁₀ per cent. of the Cleveland stock and acquired 14 per cent. of the Standard stock. The other five stockholders of the Cleveland Company acquired nothing, and the record fails to disclose that they ever complained. 3,850 shares out of the 5,400 shares of the Standard stock cost the Cleveland Company nothing. The remainder was paid for by it out of funds advanced for that purpose to C. F. Taplin, its treasurer. He testifies that these purchases were made to prevent unfriendly interests retaining or acquiring this outstanding stock; that the 5,400 shares were purchased by petitioners for just what they had cost the company (1) because the company needed the money for working capital; and (2) because it was considered that this stock as a company asset might work a disadvantage in the assessment of its own income and excess profits taxes. This testimony is plausible and there is nothing to contradict it except the possible inference that petitioners were really interested, not so much in the welfare of the company as in an effort, through their positions as officials of the company, to acquire this stock for themselves at a decided bargain—a matter in which the government is not interested and of which the minority stockholders have not complained.

Both the Commissioner and the Board of Tax Appeals based their conclusion largely upon Treasury Decision 3435,[1] now a part

of article 31 of the Internal Revenue Regulations. It is sufficient to say that whatever effect Treasury Decision 3435 might be given in other situations, it cannot here be construed to create income or dividends in a case where none otherwise existed when the facts are measured by the statute. Income cannot be created by fiat alone.

Concluding that the evidence is insufficient to support a finding that the transaction in question involved tax-producing dividends, the decision of the Board of Tax Appeals is reversed in each case, and the mandate will direct a new order in accordance herewith.

---

[1] "Where property is sold by a corporation to a shareholder or member, or by an employer to an employee, for an amount substantially less than its fair market value, such shareholder or member of the corporation or such employee shall include in gross income the difference between the amount paid for the property and the amount of its fair market value. In computing the gain or loss from the subsequent sale of such property its cost shall be deemed to be its fair market value at the date of acquisition."