## COMMISSIONER OF INTERNAL REVENUE v. VAN VORST.

### No. 6723.

Circuit Court of Appeals, Ninth Circuit.

June 24, 1932.

G. A. Youngquist, Asst. Atty. Gen., and Sewall Key and Norman D. Keller, Sp. Asst. to the Atty. Gen. (C. M. Charest, Gen. Counsel, and John R. Gaskins, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for petitioner.

Claude I. Parker, John B. Milliken, and George H. Koster, all of Los Angeles, Cal., and L. A. Luce, of Washington, D. C., for respondent.

Before WILBUR and SAWTELLE, Circuit Judges, and NORCROSS, District Judge.

NORCROSS, District Judge.

The Commissioner of Internal Revenue assessed a deficiency income tax for the year 1924, in the amount of $26,720, against the tax return of C. B. Van Vorst, deceased, by adjusting the return so as to include as income the sum of $100,000, representing the difference between the amount paid by the taxpayer to the C. B. Van Vorst Company, a corporation, for certain realty and the stipulated fair market value of the property at the time. The Board of Tax Appeals decided that the determination of the Commissioner

was erroneous (22 B. T. A. 632), and this appeal is from the decision of the Board.

The only question is whether the difference between the fair market value of the property acquired by the taxpayer and the amount he paid the corporation therefor is taxable as income. Petitioner contends that respondent estate is subject to the tax in accordance with the provisions of article 31, Regulations 65, and on the theory that it was a distribution of corporate earnings in the nature of a dividend. Respondent contends that the transaction was a purchase, therefore cannot be taxed as a dividend distribution, and that the provision of the regulation relied upon by the Commissioner is void.

The facts are not in dispute, and in the main are stated in the following stipulation:

"It is stipulated between the counsel for the respective parties, that on August 6, 1924, C. B. Van Vorst, now deceased, and whose Estate is now represented by his Executor, George W. Van Vorst, as petitioner herein, purchased from the C. B. Van Vorst Company, a corporation organized under the general corporation laws of the State of California in 1904, four certain parcels of real estate for a total sum of $54,559.60; that the said C. B. Van Vorst paid the full amount of said purchase price, namely, $54,559.60, in cash to the said Corporation, and that the said corporation thereupon conveyed the said real estate to the said C. B. Van Vorst by appropriate deeds of conveyance. It is also stipulated that the aforesaid real estate had been acquired by the corporation at a cost to it of $54,559.60.

"It is further stipulated that at the time of the purchase of the said real estate by said C. B. Van Vorst from the said corporation, the fair market value of the same was $154,559.60.

"It is further stipulated that the said C. B. Van Vorst was the owner of 46,397 shares of the capital stock of the C. B. Van Vorst Company at the time the said real estate was purchased by him as aforesaid, and that the total outstanding capital stock of the corporation on the same date was 50,000 shares of a par value of $1.00 per share.

"It is further stipulated that on March 26, 1924, the C. B. Van Vorst Company paid a cash dividend of $10,000.00 and that on July 1st, 1924, it paid a further cash dividend of $10,000.00; that at the time these dividends were paid the total outstanding capital stock of the said corporation was 50,000 shares of a par value of $1.00 per share.

"It is further stipulated that two of the aforesaid parcels of real estate were purchased by the said C. B. Van Vorst Company in the year 1914, and the other two parcels were purchased by the said corporation in the year 1923, and that the cost of all of this property to the corporation, namely, $54,559.60, includes the purchase price of the said properties plus improvements to the date of the sale of the same to the said C. B. Van Vorst and is the cost as shown by the said corporation's books."

Further facts appearing in the record, and not in dispute, are that the surplus and undivided profits of the C. B. Van Vorst Company at the close of the taxable year, after adding net profits and deducting dividends paid of $20,000, amounted to $352,166.33, and that at the close of the preceding year the company's surplus and undivided profits amounted to $357,679.23. The company paid a dividend of 10 per cent. in 1918, no dividends in 1919 and 1920, and dividends of 20 per cent. in each of the years 1921 and 1922.

In the letter of the Commissioner (so-called sixty-day letter) to respondent of date February 9, 1929, the following statements appear:

"* * * It is the opinion of this office that in accordance with Treasury Decision 3435, Cumulative Bulletin II-1, page 50, and Article 31 of Regulations 65, as the property was sold in 1924 by the corporation to C. B. Van Vorst, a shareholder, for an amount substantially less than its fair market value, the difference between the amount paid for the property and the amount of its fair market value should be included in the gross income of the purchaser for 1924.

"* * * In accordance with the report on the conference held in the office of the Revenue Agent in Charge, the transaction represented a distribution of corporate earnings and, therefore, the difference between the amount paid for the property and the amount of its fair market value is taxable as a dividend. See decision in the case of F. E. Taplin, Board of Tax Appeals Reports, Volume 12, Number 8, page 1264.

"* * * In accordance with article 31 of Regulations 65, the difference between $54,559.60 the amount paid for the property purchased in 1924 from the C. B. Van Vorst Company and $154,559.60 shown in the protest of June 19, 1928, as the fair market value of the property at the date of purchase, has been included in gross income."

It is clear that the action of the Commissioner was based on the decision of the Board of Tax Appeals in the Taplin Case and on the provisions of article 31 of Regulations 65. So much of article 31, Regulations 65 (promulgated under the Revenue Act of 1924), as relates to the question to be determined, reads: "Where property is sold by a corporation to a shareholder or by an employer to an employee for an amount substantially less than its fair market value, such shareholder of the corporation or such employee shall include in gross income the difference between the amount paid for the property and the amount of its fair market value. In computing the gain or loss from the subsequent sale of such property its cost shall be deemed to be its fair market value at the date of acquisition. * * *"

Referring to this provision of the regulation, the Board of Tax Appeals in its opinion in the instant case said: "The rule laid down in article 31 of Regulations 65 apparently is intended to interpret either section 213 (a) or section 201 (a) of the Revenue Act of 1924 but it is too broad for this purpose. In neither section is there any specific reference to such transactions as are covered by the provision of the article above referred to."

The Taplin Case, referred to in the letter of the Commissioner, was appealed to the Circuit Court of Appeals for the Sixth Circuit, and the decision of the Board was reversed. Taplin v. Commissioner, 41 F.(2d) 454, 456. Upon the question of the force of the regulation as applied to the facts of that case, the court said: "Both the Commissioner and the Board of Tax Appeals based their conclusion largely upon Treasury Decision 3435, now a part of article 31 of the Internal Revenue Regulations. It is sufficient to say that whatever effect Treasury Decision 3435 might be given in other situations, it cannot here be construed to create income or dividends in a case where none otherwise existed when the facts are measured by the statute. Income cannot be created by fiat alone."

The question involved in the Taplin Case was similar to the one in the instant case, in that it presented for determination the liability of the principal or majority of the stockholders of a certain corporation who purchased from that corporation shares of stock of a total market value of $162,000 for a price of $37,860. The effect of the decision in the Taplin Case was to hold that the regulation was without force to impose a tax liability on a shareholder of a corporation who merely purchased from it property for an amount substantially less than its fair market value, the statutes controlling not being broad enough to support such provision of the regulation.

This court, in Douglas County Light & Water Co. v. Commissioner, 43 F. (2d) 904, 905, said: "A treasury regulation has the force and effect of law unless it is in conflict with an express statutory provision. Ardsley Club v. Durey (D. C.) 40 F.(2d) 293; Union Bed & Spring Company v. Springer (C. C. A.) 39 F.(2d) 383. And in case of doubt statutes levying taxes are construed most strictly against the government. Gould v. Gould, 245 U. S. 151, 38 S. Ct. 53, 62 L. Ed. 211."

In the case of Union Bed & Spring Co. v. Commissioner (C. C. A.) 39 F.(2d) 383, 385, cited in the case supra, the court said: "The statute and the regulation are to be construed together, and, if there be a conflict, the regulation must give way."

It is well settled that department regulations may not invade the field of legislation but must be confined within the limits of congressional enactment. In International Ry. Co. v. Davidson, 257 U. S. 506, 514, 42 S. Ct. 179, 182, 66 L. Ed. 341, the court said: "Section 161 does not confer upon the Secretary any legislative power. Morrill v. Jones, 106 U. S. 466, 1 S. Ct. 423, 27 L. Ed. 267; United States v. George, 228 U. S. 14, 33 S. Ct. 412, 57 L. Ed. 712. A regulation to be valid must be reasonable and must be consistent with law. The instruction given lacks both of these essentials. To collect the cost of customs service from vessel owners or others is virtually laying a tax upon them. This cannot be done except by specific authorization of Congress."

In Utah Power & Light Co. v. United States, 243 U. S. 389, 410, 37 S. Ct. 387, 392, 61 L. Ed. 791, this expression appears: "If any of the regulations go beyond what Congress can authorize, or beyond what it has authorized, those regulations are void and may be disregarded; but not so of such as are thought merely to be illiberal, inequitable, and not conducive to the best results."

See, also, Waite v. Macy, 246 U. S. 606, 38 S. Ct. 395, 62 L. Ed. 892; Hershey Chocolate Co. v. McCaughn (C. C. A.) 42 F.(2d) 408, 412; United States v. Johnson (D. C.) 35 F.(2d) 256.

Whether the regulation is valid or the tax may lawfully be imposed must finally be

determined by the provisions of the statute interpreted in the light of the Constitution.

■ The Sixteenth Amendment provides: "The Congress shall have power to lay and collect taxes on incomes, from whatever source derived. * * *"

In Eisner v. Macomber, 252 U. S. 189, 207, 40 S. Ct. 189, 193, 64 L. Ed. 521, 9 A. L. R. 1570, referring to the Sixteenth Amendment, the Supreme Court said: " 'Income may be defined as the gain derived from capital, from labor, or from both combined,' provided it be understood to include profit gained through a sale or conversion of capital assets."

Referring to this definition, in Taft v. Bowers, 278 U. S. 470, 481, 49 S. Ct. 199, 201, 73 L. Ed. 460, 64 A. L. R. 362, the court said: "The 'gain derived from capital,' within the definition, is 'not a gain accruing to capital, nor a growth or increment of value in the investment, but a gain, a profit, something of exchangeable value proceeding from the property, severed from the capital however invested, and coming in, that is, received or drawn by the claimant for his separate use, benefit and disposal.' United States v. Phellis, 257 U. S. 156, 169, 42 S. Ct. 63, 65 (66 L. Ed. 180)."

Section 201 (a) of the Revenue Act of 1924, 43 Stat. 253, 254 (26 USCA § 932 (a), provides: "The term 'dividend' when used in this chapter * * * means any distribution made by a corporation to its shareholders, whether in money or in other property, out of its earnings or profits accumulated after February 28, 1913."

And section 213 (a) of the same act, 43 Stat. 267 (26 USCA § 954 (a) provides: "The term 'gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service * * * of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce or sales, or dealings in property whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. The amount of all such items shall be included in the gross income for the taxable year in which received by the taxpayer. * * *"

The sections of the statute quoted must, of course, be construed in the light of the controlling constitutional provision. Can it be said then that the purchase of property by a stockholder from a corporation for less than its then actual value constitutes "a gain derived from capital," or a "profit gained through a sale or conversion of capital assets?" The capital or capital assets referred to in the definition clearly means the capital or capital assets of the person liable to a tax.

In so far as the section of the statute relating to "gross income" has any bearing on the question here involved, it reads: "The term 'gross income' includes gains, profits, and income derived from * * * sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property. * * *"

■ C. B. Van Vorst did not own the property prior to his purchase from the corporation. The property belonged to the corporation, and was a part of its capital assets. Can it then be said that his purchase of the property effected a gain or profit to him by reason of a dealing in property growing out of his interest therein? Unless it can be said that his interest therein is a capital interest, clearly it cannot be so said. His interest in the property prior to the sale was not a capital interest. His capital interest or investment was represented by his stock in the company. United States v. Phellis, 257 U. S. 156, 169, 42 S. Ct. 63, 66 L. Ed. 180. The mere interest of a stockholder in the assets of a corporation does not make a taxable income out of the excess value of property purchased from the corporation at less than its actual value for the reason that it is not a gain derived from capital.

Even if it might be said that the excess value of the property over the price paid was a gain derived from capital the question would be presented whether the amount of the gain subject to tax could be determined without taking into consideration a decrease in the value of the stock interest, the stockholder's capital, occasioned by the sale of corporate assets, and which decrease, in the absence of other showing, would be in proportion to his stock holdings, in this case approximately 93 per cent. Bowers v. Kerbaugh-Empire Co., 271 U. S. 170, 46 S. Ct. 449, 70 L. Ed. 886. This, however, only further shows that the excess value of the property purchased is not an income derived from capital.

■ It is earnestly contended that the transaction denominated a sale was in fact a "dividend" within the meaning of section 201 (a), supra, in that it was in effect a distribution

made by the corporation to one of its shareholders in property out of its accumulated earnings. Counsel for the petitioner do not cite an authority directly in point. The stipulated facts in the case recite that "C. B. Van Vorst * * * purchased from the C. B. Van Vorst Company" certain real estate and "paid the full amount of said purchase price, namely, $54,559.60 * * * and that the said corporation thereupon conveyed the said real estate * * * by appropriate deeds of conveyance." There is no recital of any fact in the stipulation that is remotely suggestive of fraud or any ulterior motive, nor is it so contended. Counsel for petitioner, however, contend that "the gross inadequacy of the consideration and the relationship of the decedent to the corporation clearly support the Commissioner's determination and demonstrate that what was called a sale was in reality a distribution of assets." If this contention is to be sustained, it must be based upon the proposition urged that, because the consideration was so inadequate and the purchaser was the principal stockholder, it should for these reasons alone be regarded as a taxable distribution. In this connection it is urged that the decision in Taplin v. Commissioner, supra (C. C. A.) 41 F.(2d) 454, by reason of "the peculiar facts in the case * * * distinguish it from this case." The peculiar distinguishing facts in the Taplin Case are not pointed out, nor are any apparent. In the Taplin Case the principal or majority stockholders purchased from the corporation shares of stock of a total market value of $162,000 for a price of $37,860. The only difference upon the material facts in the two cases is that in the Taplin Case it was stock that was purchased, while in the instant case it was real property. There was a slightly wider difference in values in the Taplin Case than in this case. The question of law determined in the Taplin Case is precisely the same as here presented, and the facts controlling in no sense are materially different. In the Taplin Case, however, it was charged "that the sale was only a pretense; that it was not in good faith but was a scheme by petitioners to avoid taxation upon their dividends." The court found the latter contention not established; but in this case such contention is not urged.

The contention that a transaction which is in form a sale may, nevertheless, constitute a distribution to a stockholder of corporate assets or earnings may be conceded. It does not follow, however, that every such sale should be regarded as a distribution.

The case of Continental Co. v. United States, 259 U. S. 156, 42 S. Ct. 540, 66 L. Ed. 871, cited by counsel for petitioner, is a case where the transfer of certain certificates of interest, denominated a sale, was held to be a distribution of certain surplus assets, by reason of the fact that, by a prior decision, a railroad company was required to go out of the business of operating coal mines. As said by the court, it was a case of "mere distribution of forbidden assets in kind to stockholders," though "denominated a sale." The case is clearly distinguishable upon the controlling facts. In the absence of other showing, the mere fact that the purchaser is a stockholder of the vending corporation does not change the character of the transaction. Appeal of McMichael, 4 B. T. A. 266, 269; Fruit Belt Tel. Co. v. Commissioner, 22 B. T. A. 440; Taplin v. Commissioner (C. C. A.) 41 F.(2d) 454; Trust Co. v. Rose (C. C. A.) 28 F.(2d) 767.

Order affirmed.