THE NICOLLET ASSOCIATES, INCORPORATED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 81751.    Promulgated February 17, 1938.

*Harry A. Blackmun, Esq.*, for the petitioner.
*Gerald W. Brooks, Esq.*, for the respondent.

352

OPINION.

Mellott: The questions for determination are: (1) Upon what basis shall depreciation on the building be computed for the taxable year? (2) Is petitioner estopped to assert that the basis is the original cost, unadjusted for the payments made by the lessee upon the mortgage? (3) Is petitioner entitled to deduct from gross income the unamortized portion of the commission paid to the real estate firm in 1924? (4) Did petitioner receive taxable income in 1932 in the amount of $98,929.74 by reason of the termination of the lease?

While petitioner in its return of income for the taxable year deducted $9,984.09 as depreciation and while the respondent determined that a reasonable allowance therefor was $7,756.67, the present contentions of the parties, following their agreement that the cost of the building and the allowed and allowable depreciation are as shown in our findings, may be depicted in the following schedule:

| PETITIONER'S COMPUTATION | | RESPONDENT'S COMPUTATION | |
|---|---|---|---|
| Stipulated cost | $375,991.74 | Stipulated cost | $375,991.74 |
| Deduct | | Less | |
| Depreciation 1910 to July 1, 1924 $42,057.96 | | Payments by lessee $265,000.00 | |
| Depreciation July 1, 1924 to Dec. 31, 1931 79,872.72 | 121,930.68 | Less profit reported in 1924 86,197.54 | |
| | | Cash received and not reported | 178,802.46 |
| Remaining cost to be recovered through depreciation after Jan. 1, 1932 | 254,061.06 | Less | |
| | | Depreciation 7/1/24 to 12/31/31 79,872.72 | |
| 1/25th of remaining cost allowable as depreciation for taxable year | 10,162.44 | Net adjustment | 98,929.74 |
| | | Adjusted cost of repossessed building | 277,062.00 |
| | | Less accrued depreciation 1910 to 12/31/31 | 121,930.58 |
| | | Remaining cost to be recovered through depreciation after Jan. 1, 1932 | 155,131.32 |
| | | 1/25th of remaining cost allowable as depreciation for taxable year | 6,205.25 |

The parties admit that the petitioner erred in treating the transaction, in its return of income for the year 1924, as a sale of the building. The same error continued throughout the years 1925 to 1931, inclusive. Under the decisions of the courts and this Board, the entire amount received by the petitioner, including the payments made by the lessees for its benefit upon the mortgage, should have been reported by it as income. *Nelson Land & Oil Co.*, 3 B. T. A. 315; *Louis Rothenburg*, 5 B. T. A. 666; *O'Day Investment Co.*, 13 B. T. A. 1230; *Minneapolis Syndicate*, 13 B. T. A. 1303; *George W. Crile*, 18 B. T. A. 588; affd., 55 Fed. (2d) 804; certiorari denied, 287 U. S. 600; *Marvin H. Gates, Trustee*, 26 B. T. A. 998; affd., 69

Fed. (2d) 277; *James M. Butler*, 19 B. T. A. 718. Although petitioner undertook to *sell* the building, the practical effect of the transaction was only to grant to the lessees the right to use and occupy the building so long as the lease remained in effect. For this right, the lessees paid an additional consideration. As the court said in *Gates* v. *Helvering*, 69 Fed. (2d) 277: "It is probably not important whether it be called a bonus in the nature of advance rentals or advance rentals. It was a part of what the lessee was to pay for what he received, and what he received was a leasehold interest in the land and an equivalent interest in the building." Petitioner, not having sold the building or parted with its capital asset, was entitled to claim depreciation upon the building during the period the lease was in effect; but it did not do so. Recapitulating, during the years 1924 to 1931, both inclusive, petitioner erroneously failed to report income and failed to claim deductions which were allowable.

To some extent both parties are asking that improper adjustments be made in the taxable year to correct errors made in prior years. Petitioner, pointing to court and Board decisions holding that commissions paid by a lessor for the negotiation of a long term lease may be deducted ratably throughout the term covered by the lease, in effect says: "I deducted the $25,000 commission which I paid in 1924; but that was improper. My theory at the time was that such commission was paid for making a sale of my property. I have since ascertained that the amount which was paid was compensation to my agent for securing a long term lease and, notwithstanding the fact that I did not report as income the amounts received under it, I have now made adjusting entries in my books, debiting my surplus $23,125 representing the portion of the commission heretofore erroneously deducted from income and crediting 'Amortization of Commissions' in the same amount. My books now show unamortized commissions aggregating $23,125, and, the lease now having been terminated, I will deduct said amount from my income in the taxable year."

Respondent, in his determination of a deficiency and upon brief, in effect says: "Petitioner did not correctly report its income during the years 1924 to 1931, inclusive. I will therefore treat the unreported income—which was taxable but upon which no tax was paid—as a return to petitioner of part of its cost of the building. The 'receipts' may, and equitably should be considered as adjustments to petitioner's cost basis under section 113 (b) (1) (A) of the Revenue Act of 1932, though not 'properly chargeable to capital account', because petitioner made entries in its books restoring the building to its capital account and because petitioner is estopped from asserting that its cost basis should not be adjusted by the addition of the excess recovered, or $98,929.74."

While the parties do not state their contentions in the language set out above, their arguments, and the adjustments which they claim should be made, indicate that the contentions are about as stated. They are manifestly untenable. The earlier years are not before us and no adjustments can be made whereby either the income which was unreported can be taxed or the deductions which should have been claimed can be allowed. Our problem is to ascertain the amount of income and deductions for the year 1932, and "The law does not contemplate the adjustment in any part of an incorrectly computed tax by the incorrect computation of another tax." *Union Metal Manufacturing Co.*, 1 B. T. A. 395, 399. *Estate of William Steele*, 34 B. T. A. 173, and cases cited. Petitioner is entitled to the depreciation allowed it under the law and to no more and no less than that amount. It is likewise entitled to the deductions allowed by the law and to no more and no less than those allowed.

The statute (sec. 23 (k), Revenue Act of 1932) allows as a deduction from gross income "A reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence." The respondent in his regulations (art. 201, Regulations 77) states that a "proper allowance" is "that amount which should be set aside for the taxable year in accordance with a reasonably consistent plan * * * whereby the aggregate of the amounts so set aside, plus the salvage value, will, at the end of the useful life of the property in the business, equal the basis of the property * * *." Substantially the same rule was enunciated by the Supreme Court in *City of Knoxville* v. *Knoxville Water Co.*, 212 U. S. 1, and *United States* v. *Ludey*, 274 U. S. 295, and has been applied by this Board in various cases. Cf. *Richmond Belt Railway Co.*, 13 B. T. A. 1291, and *Terminal Realty Co.*, 32 B. T. A. 623.

It is fundamental, and is recognized by the respondent, both in his regulations (art. 204, Regulations 77) and in his brief in the instant proceeding, that "The capital sum to be replaced by depreciation allowances is the cost or other basis of the property in respect of which the allowance is made." Upon brief, however, respondent, relying upon the provisions of section 113 (b) (1) (A) of the Revenue Act of 1932,[1] contends that the "net adjustment" of $98,929.74 shown in

---

[1] SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS.

* * * * *

(b) ADJUSTED BASIS.—The adjusted basis for determining the gain or loss from the sale or other disposition of property, whenever acquired, shall be the basis determined under subsection (a), adjusted as hereinafter provided.

(1) GENERAL RULE.—Proper adjustment in respect of property shall in all cases be made—

(A) for expenditures, receipts, losses, or other items, properly chargeable to capital account, including taxes and other carrying charges on unimproved and unproductive real property, but no such adjustment shall be made for taxes or other carrying charges for which deductions have been taken by the taxpayer in determining net income for the taxable year or prior taxable years.

* * * * *

his computation, *supra*, should be deducted from such basis, his theory being that such net amount constituted a "receipt" within the meaning of the section quoted. Any such construction, however, fails to take into consideration the words of the statute, "properly chargeable to capital account." We have held that the amounts received in the years 1924 to 1931 from the supposed "sale" of the building constituted income. Respondent agrees with this construction. Cf. *James M. Butler, supra*. But such income, at least under the circumstances here present, was not "properly chargeable to capital account." It seems to follow, and we so hold, that the respondent's contention in this respect can not be sustained.

But, argues respondent, petitioner is acting "unconscionably" in claiming its deduction for depreciation without making any "effort or offer to make the commissioner whole for the tax on said items (the income which it received and did not report in 1924 to 1931, inclusive) which is clearly due." He contends that the equitable doctrine of estoppel prevents it from taking as a basis for depreciation its cost of the building unless adjusted as shown in his schedule. The petitioner, on the other hand, contends that the equities are all in its favor in that it made overpayments of its tax in each of the years, save one. We have made no attempt to weigh equities, fancied or real. Apparently there were no false representations of fact but at most a mutual mistake of law. In this connection it may be remarked that respondent made an audit of petitioner's return for the year 1924 and collected an additional tax of $308.78; but he did not attempt to collect, as he might have collected, tax upon the entire amount received during that year if he had recognized that no sale had actually been made. He also made an audit of petitioner's 1926 return and advised it that the return was considered to be correct.

In *Estate of William Steele, supra*, we said: "We have been referred to no case where estoppel was founded on mutual mistake of law alone", and therein we discussed at some length estoppel as applied to tax cases. It would serve no useful purpose to repeat the discussion here. Suffice it to say that we are of the opinion, and hold, that estoppel is not applicable under the facts before us. Cf. *Sugar Creek Coal & Mining Co.*, 31 B. T. A. 344; *Wobber Brothers*, 35 B. T. A. 890, on appeal to the Circuit Court of Appeals for the Ninth Circuit; *Commissioner* v. *Union Pacific Railroad Co.*, 86 Fed. (2d) 637, affirming *Union Pacific Railroad Co.*, 32 B. T. A. 383; and *Salvage* v. *Commissioner*, 76 Fed. (2d) 112.

Petitioner, in support of its contention that the item set up on its books after the termination of the lease as "Unamortized Commissions" is deductible, cites several court and Board decisions which hold that commissions paid by a lessor for the negotiation of a long term lease

are deductible from gross income, ratably, over the period covered by the lease. In most, if not all, of the cited cases the issue was simply whether the total amount should be deducted in one year or spread over the term; but the petitioner has cited no case in which the use of both methods has been approved, thus enabling the taxpayer to deduct twice the amount so paid. That, in effect, is what petitioner is seeking to do here. It deducted the amount from its gross income in 1924 and the deduction was allowed. The statute of limitations prevents any adjustment for that year. What has been said above with reference to the respondent's adjustments and contentions is, at least in part, likewise applicable to the petitioner's claim that the amount of unamortized commissions is deductible in the taxable year. "There is nothing in the [Revenue] Act that purports to authorize double deduction of losses. * * *." *Charles Ilfeld Co.* v. *Hernandez*, 292 U. S. 62.

In *Baltimore & Ohio Railroad Co.*, 30 B. T. A. 194; affd., 77 Fed. (2d) 999, the Board, under facts somewhat analogous to those in the instant proceeding, said: "The petitioner elected to claim the expenses as deductions in the respective years in which they were incurred, rather than exhaust them ratably over the life of the bonds. The respondent allowed the claims, thus giving the petitioner the full benefit of the applicable revenue acts as he then interpreted them. Refusal to allow aliquot portions of the expenses as deductions in the taxable years, when the bar of the statute of limitations precludes adjustments in petitioner's income tax returns for years prior to 1920, is, we think consistent with, rather than contrary to, principles of equity. The petitioner is in no position to contest the legality of the claims it made." (Citing cases.) See also *Stern Bros.* v. *United States* (Ct. Cls.), 8 Fed. Supp. 705.

It is held (1) that the basis for the computation of depreciation upon petitioner's building for the taxable year is $254,061.06; (2) that such basis should not be adjusted for the payments made by the lessee upon the mortgage; (3) that petitioner did not receive taxable income in the year 1932 by reason of the termination of the lease; and (4) that the respondent did not err in disallowing the deduction from gross income of the $23,125, described by the petitioner in its return as "Unamortized 1924 Commission Charged Off." Deficiency shall accordingly be recomputed.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

---

SMITH, dissenting: The first question presented by this proceeding is the allowance for depreciation deductible from the gross income

of 1932. The respondent has determined the allowance in the amount of $7,756.57.

Section 23 (k) of the Revenue Act of 1932 permits a taxpayer to deduct from gross income "a reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence." The question in issue is what constitutes a "reasonable allowance." In *United States* v. *Ludey*, 274 U. S. 295, it was stated:

* * * The amount of the allowance for depreciation is the sum which should be set aside for the taxable year, in order that, at the end of the useful life of the plant in the business, the aggregate of the sum set aside will (with the salvage value) suffice to provide an amount equal to the original cost. * * *

The stipulated cost of the building was $375,991.74. The depreciation sustained upon the property to July 1, 1924, and deducted from gross income in the taxpayer's return, was $42,057.96, leaving a remaining cost to the petitioner of $333,933.78. In the petitioner's tax return for 1924 the petitioner treated the transaction as a sale of the building to the lessee. It received $60,000 cash upon the sale, which was applied against the remaining cost, thereby reducing the cost basis to $273,933.78. Subsequently, the lessee paid $205,000 upon the mortgage, which redounded to the benefit of the petitioner. This reduced the remaining cost of the building to the petitioner to $68,933.98. The parties are agreed that 4 percent of the remaining cost to the petitioner is a reasonable allowance for depreciation for 1932. Four percent of $68,933.78 is $2,757.35. The respondent did not, however, use as the remaining cost of the building $68,933.78, but added thereto $86,197.54, which was the profit returned by the petitioner for 1924 as having been realized upon the sale of the building. The respondent, therefore, determined the remaining cost of the building to the petitioner to be $155,131.32, and he has based his "reasonable allowance" for depreciation as 4 percent of this amount. I do not see how the reasonable allowance for depreciation is an amount greater than the respondent has determined. I think it is entirely immaterial that the petitioner should have returned the $60,000, received in 1924 as a part payment on the building, as additional rent, or the additional $205,000 paid by the lessee in subsequent years upon the reduction of the mortgage. The plain facts are that the only remaining cost of the building to the petitioner at January 1, 1932, was $68,933.78. It is not entitled to recover through depreciation allowance over the useful life of the building a greater amount than represents its investment in the building.