### COMMISSIONER OF INTERNAL REVENUE v. SALTONSTALL.

No. 3671.

Circuit Court of Appeals, First Circuit.

Dec. 10, 1941.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

MAGRUDER, Circuit Judge.

Eleanor Saltonstall, the taxpayer herein, and her brother, are sole income beneficiaries, in equal shares, under a trust established by the will of Peter C. Brooks, probated in 1920. In her individual income tax return for 1935, Mrs. Saltonstall reported her share of the distributable income of the trust, as disclosed in the fiduciary return, Form 1041, filed by the trustees for that year. The Commissioner ruled that her trust income should be increased in the sum of $10,911.92, half of the amount which the trustees had reserved out of rent from the Brooks Building in Chicago to cover the year's depreciation of the building. Upon petition for redetermination of the deficiency resulting from this adjustment, the Board of Tax Appeals upheld the taxpayer. The case is before us on petition by the Commissioner for review of the Board's decision.

In 1926, the building in question, and the land upon which it stood, were disposed of by the trustees to the Brooks Building Corporation (in which the trustees had no interest), under the terms of an indenture which purported to be a sale of the building and lease of the land for a period of 198 years for a reserved rental. $900,000 was the consideration actually received for the building. The transferee corporation was given an option to tear down the existing building and replace it with another meeting certain specifications. It agreed to pay taxes, to insure, repair and restore the building.

The trustees in good faith computed the profit on the presumed sale of the building in 1926 as follows:

| | |
|---|---:|
| Unadjusted basis | $740,000.00 |
| Improvements | 7,506.34 |
| | 747,506.34 |
| Depreciation allowed | 90,365.46 |
| | 657,140.88 |

| | | |
|---|---:|---:|
| Cash received | $900,000.00 | |
| Less expenses | 70,740.55 | |
| Net receipt | | 829,259.45 |
| Capital gain | | $172,118.57 |

Thus, in computing the gain of $172,118.57, the trustees wrote off the books of the

Michael H. Cardozo, IV, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Louise Foster, Sp. Assts. to Atty. Gen., on the brief), for Commissioner.

Edward C. Thayer, of Boston, Mass. (Loring P. Jordan, Jr., of Boston, Mass., on the brief), for Taxpayer.

trust the recorded depreciated value of the Brooks Building, namely, $657,140.88. This gain so computed was included in gross income for the year 1926 in the income tax return (Form 1040) filed by the trustees; it was, however, more than offset by other losses. The report of the revenue agent upon his audit of the return filed by the trustees made reference to the Brooks Building transaction, but no adjustment was made of the amount of gain reported by the trustees with respect thereto.

The returns of the trustees for 1926 (Form 1040, aforesaid, and a fiduciary return, Form 1041) did not show any of the said $172,118.57 gain from the presumed sale of the Brooks Building as distributable to the beneficiaries, and none of such amount was ever distributed to the taxpayer. The income reported by the taxpayer on her individual return for 1926 did not include any portion of this supposed capital gain.

A default by the Brooks Building Corporation having occurred in 1931, the trustees took possession of the land and building pursuant to a judgment entered in the Municipal Court of Chicago in a forcible entry and detainer suit. Title to the property was confirmed in the trustees in 1932 by decree of the Circuit Court of Cook County, Illinois, in a suit to quiet title.

The trustees in 1932 restored the Brooks Building to the books of the trust in the amount of $747,461.40, which represented the balance shown by the old ledger less a slight adjustment for error. Likewise the old depreciation reserve account which had been written off in the amount of $90,365.46 was restored to the books in 1932 in the amount of $90,313.04,[1] the difference of $52.42 representing correction of an error. This was done by the trustees, upon advice of counsel to the effect that treating the disposition of the property in 1926 as a sale had been established to be erroneous by the decision in the case of Minneapolis Syndicate v. Commissioner, 1928, 13 B.T.A. 1303, acquiesced in by the Commissioner (C.B. VIII-1, p. 31). In this altered view of the transaction the sum of $900,000 received in 1926 did not constitute proceeds of sale of the Brooks Building but was in fact rent therefor

which should have been taxed as income in 1926.

In their fiduciary returns (Form 1041) for the years 1933, 1934 and 1935, the trustees claimed a deduction in each year for depreciation on the Brooks Building in the amount of $21,823.84, or 3% of the adjusted book value of the building, namely, $727,461.40 ($20,000 having been subtracted from the book value as the estimated value, at date of reacquisition, of certain elevators discarded in 1932). It is stated in the Board's findings of fact that the amount of these annual deductions for depreciation had been "charged to distributable income and credited to principal by the trustees in every year and the whole of such amount was excluded from distribution to the beneficiary and none of it was distributed to the petitioner [Mrs. Saltonstall] and the probate account of the trustees was allowed upon such basis." Only the year 1935 is now in issue.

The taxpayer contends that the understatement of income in 1926 resulted from a mutual mistake of law; that the trustees had been guilty of no concealment or misrepresentation of facts; that the statute of limitations now prohibits rectification of the 1926 error; and that this rectification cannot be indirectly accomplished by distorting the 1935 income computed on the basis of the true situation. Salvage v. Commissioner, 2 Cir., 1935, 76 F.2d 112, affirmed sub nom., Helvering v. Salvage, 1936, 297 U.S. 106, 56 S.Ct. 375, 80 L.Ed. 511; Commissioner v. Union Pac. R. Co., 2 Cir., 1936, 86 F.2d 637; Helvering v. Williams, 8 Cir., 1938, 97 F.2d 810; Hawke v. Commissioner, 9 Cir., 1940, 109 F.2d 946, certiorari denied, 1940, 311 U.S. 657, 61 S.Ct. 11, 85 L.Ed. 421; Helvering v. Schine Chain Theatres, Inc., 2 Cir., 1941, 121 F.2d 948. The Commissioner has been quite insistent upon this point of view in the reverse case where in an earlier year a taxpayer by mistake had overstated his income. See Bigelow v. Bowers, 2 Cir., 1934, 68 F.2d 839, certiorari denied, 292 U.S. 656, 54 S.Ct. 864, 78 L.Ed. 1504; Corinne S. Koshland v. Commissioner, 1935, 33 B.T.A. 634.

There are cases where a taxpayer who has made an underpayment in a prior year has been prevented, by the doctrine

---

[1] The Board opinion states that the trustees "were not entitled to an allowance for depreciation while the property was under this particular lease, because the lessee was bound to make good on all depreciation of the property."

of equitable estoppel, from showing the true facts to defeat a deficiency assessment for a subsequent year. Crane v. Commissioner, 1 Cir., 1934, 68 F.2d 640; Portland Oil Co. v. Commissioner, 1 Cir., 1940, 109 F.2d 479, 485, 486, certiorari denied, 1940, 310 U.S. 650, 60 S.Ct. 1100, 84 L.Ed. 1416. See Raleigh v. United States, Ct.Cl.1934, 5 F.Supp. 622. But the foundation of these estoppel cases is a misrepresentation of fact, express or implied; and after the Government has changed its position in reliance thereon, the taxpayer is not permitted to show the fact to be other than as previously represented. In the present case there was no such misrepresentation. The Commissioner was apprised of all the facts and approved the returns for 1926 under a mistake of law. Estoppel was not pleaded here and the Commissioner disclaims reliance upon such defense. In this he was well advised. See United States v. Dickinson, 1 Cir., 1938, 95 F.2d 65; Helvering v. Williams, 8 Cir., 1938, 97 F.2d 810; Helvering v. Schine Chain Theatres, Inc., 2 Cir., 1941, 121 F.2d 948; Sugar Creek Coal & Mining Co. v. Commissioner, 1934, 31 B.T.A. 344.

But the Commissioner urges that in effect the trustees recovered the entire cost of the building in 1926 by virtue of having deducted in that year the depreciated cost in calculating the capital gain from the supposed sale of the building. To allow a further deduction for depreciation in the return of income for 1935 would contravene the policy of the law against double or duplicating deductions—so the argument goes.

Ilfeld Co. v. Hernandez, 1934, 292 U.S. 62, 54 S.Ct. 596, 78 L.Ed. 1127, is the Supreme Court case chiefly relied on. There a parent corporation had properly deducted the losses of certain subsidiaries in its consolidated returns for several years; and it was held that the Act and Regulations should not be construed to permit the same deduction to be made again in stating the eventual loss to the parent corporation from its investment in the subsidiaries. The deductions had been correctly taken in the earlier years, and no question of the statute of limitations was involved. The holding is irrelevant to the case at bar. To the same effect are Commissioner v. Apartment Corp., 4 Cir., 1933, 67 F.2d 3, certiorari denied, 1934, 292 U.S. 631, 54 S.Ct. 639, 78 L.Ed. 1485; Greif Cooperage Corp. v. Commissioner, 3 Cir.,

1936, 85 F.2d 365. Cincinnati Milling Machine Co. v. United States, Ct.Cl.1936, 14 F.Supp. 505, was somewhat different. Here a parent corporation making a consolidated return deducted certain losses of a subsidiary. The deductions were allowed by the Commissioner, although a later Supreme Court decision indicated that this should not have been done. After the statute of limitations had run, the parent corporation in a subsequent year sought to deduct its losses on liquidation of the subsidiary. It was held that the amount which had been improperly deducted in the earlier year must be subtracted from the loss taken on liquidation, in order to prevent a double deduction. The court relied upon the provision of § 202(b) of the Revenue Act of 1926, 44 Stat. 11, 26 U.S.C.A. Int.Rev.Acts, page 147, to the effect that in computing the amount of gain or loss upon sale or other disposition of property, proper adjustment of the basis "shall be made for any expenditure or item of loss properly chargeable to capital account." Whether the loss suffered by the subsidiary in the earlier year, for which the parent corporation improperly claimed a deduction in its consolidated return for that year, was a loss "properly chargeable to capital account" of the parent corporation, may be open to question. However that may be, the Commissioner does not claim, and could hardly claim, in the case at bar that § 113(b) (1) (A) of the Revenue Act of 1934, 48 Stat. 709, 26 U.S.C.A. Int.Rev. Code, § 113(b) (1) (A), which corresponds to § 202(b) of the Act of 1926, has any application to the state of facts here presented. See Nicollet Associates, Inc. v. Commissioner, 1938, 37 B.T.A. 350, 356, 357. In Levi Strauss Realty Co. v. United States, 9 Cir., 1930, 41 F.2d 55, certiorari denied, 1930, 282 U.S. 868, 51 S.Ct. 75, 75 L.Ed. 767, two affiliated corporations (A and B) filed separate returns for both 1921 and 1922. They should have filed a consolidated return for 1921; for 1922 such return was optional. Corporation A suffered a loss in 1921 which it carried over and deducted from its profit in 1922 in its separate return for the latter year. Later, Corporation B sued for a refund of taxes paid in 1921 on the theory that since there should have been a consolidated return in 1921, A's 1921 loss should have been used to offset B's 1921 profit. A having already deducted its 1921 loss in its return for 1922, it was held that B was

not entitled to make use of the same deduction to offset its own 1921 profit. This case is somewhat closer to the situation in the case at bar but it is probably distinguishable as turning on the special provisions of law regulating consolidated returns of affiliated corporations. It does not involve those sections of the revenue act dealing with the basis of property for the purpose of calculating depreciation and gain or loss upon sale.

"The amount of the allowance for depreciation is the sum which should be set aside for the taxable year, in order that, at the end of the useful life of the plant in the business, the aggregate of the sums set aside will (with the salvage value) suffice to provide an amount equal to the original cost." United States v. Ludey, 1927, 274 U.S. 295, 300, 301, 47 S.Ct. 608, 610, 71 L.Ed. 1054. Since the amount so deducted for each taxable year is necessarily based upon an estimate of the useful life of the building, it may happen that after deductions for depreciation have been taken up to the full amount of the original cost or other basis, the building may still have several years of useful life ahead. Cameron v. Commissioner, 3 Cir., 1932, 56 F.2d 1021, relied on by the Government, merely holds that the taxpayer in such a case cannot continue to take deductions for depreciation for the subsequent years. This holding is manifestly in accord with the theory on which the allowance for depreciation is provided in the statute and is expressly covered by Treasury Regulations 86, Revenue Act of 1934, Art. 23(l)-5. Burlington Gazette Co. v. Commissioner, C.C.A., 8 Cir., 1935, 75 F.2d 577, adds nothing of significance. There a corporation taking over property from a partnership in a tax-free exchange, was held not entitled to further deduction for depreciation after the cost of the property had been fully returned through deductions for depreciation previously allowed the partnership and the succeeding corporation. The reason is that by express provision of law the transferee merely stepped into the shoes of the transferor and took over the latter's basis. Revenue Act of 1928, §§ 112(b) (5), 113(a) (8), 45 Stat. 816, 818, 26 U.S.C.A. Int.Rev.Acts, pages 377, 382, B. F. Shaw Printing Co. v. Helvering, 1934, 63 App.D.C. 319, 72 F. 2d 187, was a similar holding.

In Comar Oil Co. v. Helvering, 8 Cir., 1939, 107 F.2d 709, 711, the taxpayer set up a reserve account to meet anticipated losses and apparently without any authority of law deducted the amount of such reserve from income in the year in which it was set up. In a later year the taxpayer attempted to deduct a specific loss of the sort which the reserve account had been set up to absorb. The court held that § 23(f) of the Revenue Act of 1928, 26 U. S.C.A. Int.Rev.Code, § 23(f), allowing the deduction from gross income of "losses sustained during the taxable year and not compensated for by insurance or otherwise," should not be construed to permit a second deduction for the identical loss which had already been allowed for in the deduction for the reserve account claimed in the earlier year. Baltimore & Ohio R. R. v. Commissioner, 4 Cir., 1935, 78 F.2d 456, is also distinguishable. There, the taxpayer upon refunding certain bonds prior to 1920 had deducted the entire flotation cost in the year in which it was incurred, in accordance with the then prevailing practice of the Commissioner. In 1920 the Commissioner changed his practice and required such expenses to be prorated over the life of the bonds (see Helvering v. Union Pacific R. Co., 293 U. S. 282, 55 S.Ct. 165, 79 L.Ed. 363), except where they had been claimed as a deduction and allowed in returns for years prior to 1920. The taxpayer claimed that a deduction in an amount equal to a pro rata annual part of the total expenses should be allowed for the year 1925. It was held that in the absence of a specific authorization, the deduction in 1925 of amounts admittedly allowed previously under the earlier practice was properly disallowed.

In Ramsey v. Commissioner, 10 Cir., 1933, 66 F.2d 316, certiorari denied, 1933, 290 U.S. 673, 54 S.Ct. 91, 78 L.Ed. 581, valid regulations gave the taxpayer an option of treating certain incidental expenses as current operating costs or as capital expenditures. The taxpayer treated them as the former and deducted them from net income. In a later year the taxpayer sought to treat the same expenditures as capital, adding them to his basis in calculating his gain upon sale of the property. Obviously he could not do this, having once made his election and having obtained the benefit of a deduction accordingly; and the court so held.

Upon examination of all the cases cited by the Commissioner we find none of them controlling in the peculiar situation now before us.

In United States v. Ludey, 1927, 274 U.S. 295, 47 S.Ct. 608, 611, 71 L.Ed. 1054, the taxpayer during earlier years had taken insufficient deductions for depletion of mining property. Upon sale of the property in 1917 the question arose as to the proper basis upon which to calculate the taxpayer's gain. The court said:

"The aggregate for depreciation and depletion claimed by Ludey in the income tax returns for the years 1913, 1914, 1915, and 1916, and allowed, was only $5,156. He insists that more cannot be deducted from the original cost in making the return for 1917. The contention is unsound. The amount of the gain on the sale is not dependent on the amount claimed in earlier years. If in any year he has failed to claim, or has been denied, the amount to which he was entitled, rectification of the error must be sought through a review of the action of the bureau for that year. He cannot choose the year in which he will take a reduction. On the other hand, we cannot accept the government's contention that the full amount of depreciation and depletion sustained, whether allowable by law as a deduction from gross income in past years or not, must be deducted from cost in ascertaining gain or loss. *Congress doubtless intended that the deduction to be made from the original cost should be the aggregate amount which the taxpayer was entitled to deduct in the several years.*" [Italics added.]

The language just quoted is significant in view of the provisions in § 114(b) (1) of the Revenue Act of 1934, 48 Stat. 710, 26 U.S.C.A. Int.Rev.Code, § 114(b) (1), that the basis upon which depreciation or depletion is to be allowed in respect of any property is the "adjusted basis provided in section 113(b) for the purpose of determining the gain upon the sale or other disposition of such property." Section 113(b) (1) (B), 48 Stat. 709, 26 U. S.C.A. Int.Rev.Code, § 113(b) (1) (B), provides that adjustment of the cost basis of the property shall be made for depreciation "to the extent allowed (but not less than the amount allowable) under this Act [chapter] or prior income tax laws." The trustees did not take any deduction for depreciation in 1926 and no such deduction was allowed. Certainly the deduction of the whole remaining depreciated cost was not "allowable" in 1926. True, the trustees failed to report the full $900,-000 as income for that year, and thus ob-

tained an advantage in diminishing the amount of the tax as if they had claimed a deduction by way of anticipatory depreciation to the extent of the full cost of the building. But the argument proves too much. If it were sound, the Government could always circumvent the statute of limitations as to earlier years by denying to the taxpayer deductions otherwise rightfully allowable on the ground that the taxpayer by understatement of income in an earlier year had already obtained an advantage at least equivalent to that he would now obtain by the deduction sought. If the trustees in the case at bar had not reported any income as arising out of the 1926 transaction and the Commissioner, knowing the facts, had failed to collect the tax due for that year, it obviously could not be contended that depreciation on the building should be disallowed in the return for 1935. It would then indeed be an odd result if the trust should lose the benefit of the 1935 deduction by reason of having made *some* return of income from the 1926 transaction, this income being erroneously denominated a capital gain arrived at by deducting the depreciated cost from the supposed sale price.

■ Article 23(l)-5 of Regulations 86 provides: "If the cost or other basis of the property has been recovered through depreciation or other allowances no further deduction for depreciation shall be allowed." For the reasons already indicated we do not believe that the cost of the building was recovered in 1926 through a depreciation allowance or through any other allowance within the meaning of the Regulations or of the statute.

By § 820 of the Revenue Act of 1938, 52 Stat. 581, now 26 U.S.C.A. Int.Rev.Code, § 3801, the Congress has dealt comprehensively with situations like the present where a taxpayer or the Commissioner, after operation of the statute of limitations prevented correction of an error in an earlier year, was enabled under pre-existing law to obtain a double advantage by taking in a later year a position contrary to that which caused the error. One of the instances specifically covered is where a determination by the Board or a court allows a deduction or credit which had been erroneously allowed to the taxpayer in an earlier year. As bearing on the case at bar, two things are worthy of note with reference

to § 3801: (1) It meets the inequity of the situation not by distorting the net income computation for the later year, but by opening up the earlier year for adjustment of the original error, notwithstanding the statute of limitations. (2) No such adjustment is to be made under this section in respect of any taxable year prior to January 1, 1932.

If, as we believe, the trustees properly took a deduction for depreciation in 1935, the Commissioner was of course wrong in adding half the amount of this deduction to the gross income of Mrs. Saltonstall and determining a deficiency accordingly. But if we are wrong in our conclusion that the deduction was proper, this would only affect the tax liability of the trustees for 1935, a matter not now before us. It would not follow that there was any deficiency in Mrs. Saltonstall's individual tax for 1935.

The trustees on their return have claimed the full deduction for depreciation in the taxable year. See Treasury Regulations 86, Art. 23($l$)-1.[2] Mrs. Saltonstall reported the full amount of the trust income "to be distributed currently by the fiduciary" to her as beneficiary, Rev.Act of 1934, § 162(b), 48 Stat. 728, 26 U.S.C.A. Int.Rev.Code, § 162(b), and has claimed no deduction for depreciation.

Paragraph 17 of the will of Peter C. Brooks provided:

"All rents dividends and other payments in the nature of income shall for the purposes of my will be considered as accruing from day to day like interest on money lent and be apportionable in respect of time accordingly. And my trustees shall have full powers of determining all questions in regard to such apportionment and all questions whether any moneys or things are to be treated as capital or income and of determining the mode in which the expenses of management and other expenses incidental to or connected with the execution of the trusts of my will ought to be borne as between capital and income or otherwise which powers shall include (without the generality thereof being hereby restrained) the power of determining in case my trustees shall make any investment in any bond or security for money at a premium whether and to what extent and in what manner any part of the actual income of such bond or security shall be dealt with as capital with a view to prevent the diminution of capital by reason of the payment of such premium. And every such determination whether made upon a question actually raised or implied in the acts or proceedings of my trustees shall be conclusive and binding upon all persons interested."

Under this provision in the trust instrument the trustees have wide discretion in making allocations as between principal and income. See Dumaine v. Dumaine, 1938, 301 Mass. 214, 16 N.E.2d 625, 118 A.L.R. 834. Whether as between the trust and the federal government a deduction for depreciation could be taken in 1935, it seems clear that Mrs. Saltonstall could not successfully challenge the action of the trustees in allocating part of the 1935 income to depreciation before determining the distributable shares of the beneficiaries. The capital asset, the building, with some years of useful life ahead, is continuing to depreciate in fact. The power of the trustees, as against the income beneficiaries, to make provision for this continuing depreciation, is not dependent upon whether the trustees are entitled to take a deduction for depreciation in order to diminish the tax liability of the trust to the federal government. Pursuant to the broad discretionary power given them under the will, the trustees have allocated part of the 1935 rental income to principal and distributed the balance to the beneficiaries; and their accounts have been allowed by the probate court on this basis. The Commissioner in ruling that for income tax purposes Mrs. Saltonstall's trust income must be increased by $10,911.92, has added to her income a sum she never received and which under the trust instrument she was not entitled to claim.

The decision of the Board of Tax Appeals is affirmed.

---

[2] "For example, if the trust instrument provides that the income of the trust computed without regard to depreciation shall be distributed to a named beneficiary, such beneficiary will be entitled to the depreciation allowance to the exclusion of the trustee, while if the instrument provides that the trustee in determining the distributable income shall first make due allowance for keeping the trust corpus intact by retaining a reasonable amount of the current income for that purpose, the allowable deduction will be granted in full to the trustee."