## UNITED STATES v. ACHABAL.
### No. 51.

District Court, D. Nevada.
Aug. 5, 1940.

Miles N. Pike, U. S. Atty., and John S. Halley, Asst. U. S. Atty., both of Reno, Nev., William B. Holst, Sp. Atty., Department of Justice, of Washington, D. C., and Norman M. Littell, Asst. Atty. Gen., for plaintiff.

Milton B. Badt and Orville R. Wilson, both of Elko, Nev., and Donovan, Leisure, Newton & Lumbard, William Donovan, Carl E. Newton, Hiram E. Wooster, and John Howley, all of New York City, for defendant.

NORCROSS, District Judge.

This is one of thirty-nine actions instituted at or about the same time, November

20, 1939, and presenting the same questions of law, thirty-two of which are still pending and seven of which have been dismissed. The pending actions were submitted in conjunction with the instant case.

The questions of law presented, upon a motion to dismiss, are in respect to the validity of certain rules or regulations adopted by the Secretary of the Interior under the provisions of the Act of Congress approved June 28, 1934, known as the "Taylor Grazing Act," 43 U.S.C.A. §§ 315–315p, 48 Stat. 1269.

The action prays for judgment for grazing fees for grazing upon lands in "Nevada District No. 1.," as provided in said rules and regulations. It is the contention of defendant that the rules or regulations authorizing the issuance of temporary licenses, as distinguished from "permits," as provided for in section 315b, and providing fees therefor, are without authority of law and void.

By section 315 it is provided: "In order to promote the highest use of the public lands * * * the Secretary of the Interior is authorized, * * * by order to establish grazing districts * * * from any part of the public domain * * * which in his opinion are chiefly valuable for grazing and raising forage crops. * * Before grazing districts are created in any State as herein provided, a hearing shall be held in the State, after public notice thereof shall have been given, at such location convenient for the attendance of State officials, and the settlers, residents, and livestock owners of the vicinity, as may be determined by the Secretary of the Interior. * * *"

By section 315a, it is provided: "The Secretary of the Interior shall make provision for the protection, administration, regulation, and improvement of such grazing districts as may be created under the authority of the foregoing section, and he shall make such rules and regulations and establish such service, enter into such cooperative agreements, and do any and all things necessary to accomplish the purposes of this chapter and to insure the objects of such grazing districts, namely, to regulate their occupancy and use, to preserve the land and its resources from destruction or unnecessary injury, to provide for the orderly use, improvement, and development of the range * * *."

By section 315b, it is provided: "That the Secretary of the Interior is hereby authorized to issue or cause to be issued permits to graze live stock on such grazing districts to such bona fide settlers, residents, and other stock owners as under his rules and regulations are entitled to participate in the use of the range, upon the payment annually of reasonable fees in each case to be fixed or determined from time to time: * * * such permits shall be for a period of not more than ten years, subject to the preference right of the permittees to renewal in the discretion of the Secretary of the Interior, who shall specify from time to time numbers of stock and seasons of use. * * *"

The rules adopted by the Secretary of the Interior, here in question, read:

"Permits within the meaning of section 3 (315b) of the act of June 28, 1934 (48 Stat. 1269), shall be issued as soon as the necessary data are available upon which to ascertain the proper use of the lands and water which entitle their owners, occupants or lessees to a preferential grazing privilege."

"During the intervening period, temporary licenses will be issued under authority of section 2 of said act to provide for the existing livestock industry using the public lands in such districts."

"A grazing fee of five (5) cents per head per month, or fraction thereof, for each head of cattle or horses and one (1) cent per month, or fraction thereof, for each sheep or goat shall be collected from each licensee * * *."

Rules and Regulations, as above quoted, were adopted as of dates March 2, 1936, January 27, 1937, and March 16, 1938.

The form of license authorized by the rules and regulations to be issued by the Regional Grazer contained, among other conditions, the following: "It is not effective unless payment has been made of the fee prescribed by the Secretary of the Interior."

The purpose of the Taylor Grazing Act, as set forth in its title, was "to stop injury to the public grazing lands by preventing overgrazing and soil deterioration, to provide for their orderly use, improvement, and development, to stabilize the livestock industry dependent upon the public range."

It is clear from the title of the Act that Congress recognized that it was dealing with a question of great national importance affecting an industry which produced food products for which there was a de-

mand throughout the nation at large and which had its basis in the use of that portion of the public domain which, generally, because of its mountainous character, could be put to no beneficial use other than livestock grazing. This situation affected vast areas particularly from the Rocky Mountain regions to the Pacific Coast. In the State of Nevada livestock is one of its two major industries, the other being mining.

It is clear both from the title and body of the Act that the purpose of Congress was to aid the livestock industry which for the major part of a century had been allowed free use of the public domain suitable mainly to its purpose. As said by the United States Court of Appeals for the District of Columbia in Red Canyon Sheep Co. v. Ickes, 69 App.D.C. 27, 98 F. 2d 308, 314: "In the arid regions of the West commercial success in the livestock industry requires that sheep and cattle be run upon the open range. This is a matter of common knowledge. Second, the Act is intended, in the interest of the stock growers themselves, to define their grazing rights and to protect those rights by regulation against interference."

The law is well settled that where a statute is enacted to effect a certain major purpose of public interest within the general control of a particular public official or Department of Government and such statute authorizes such official to make rules and regulations to aid in carrying out the purposes of the statute, that such rules and regulations to be valid must be in accordance with the provisions of the statute, subordinate to its provisions and not in conflict therewith.

We have here a statute to deal with making radical changes in the control and regulation of a large portion of the public domain. Those changes impose new and important duties upon the Secretary of the Interior. To aid in the performance of those duties that official is authorized to adopt rules and regulations respecting the administration of the statute. The purpose of the statute and the changes designed to be accomplished are such that considerable time and investigation would be required before the main purposes may be accomplished. A number of grazing districts are required to be established in each of about one-fourth of the States of the Union. Those, who with their predecessors in interest for long period of years have exercized grazing privileges upon the public domain, are generally to be recognized as having a preferred right to grazing "permits." The statute, § 315b, specifically provides for the issuance of such grazing "permits * * * upon the payment annually of reasonable fees in each case to be fixed or determined from time to time: * * * no permittee complying with the rules and regulations * * * shall be denied the renewal of such permit, if such denial will impair the value of the grazing unit of the permittee, when such unit is pledged as security for any bona fide loan. Such permits shall be for a period of not more than ten years, subject to the preference right of the permittees to renewal * * *."

It may be conceded that before a permit may be granted that a considerable time might be required to determine those having preferred rights to permits, the size of the "grazing unit" to be apportioned to each permittee and the "reasonable fee in each case." It is clear from the purpose of the statute that generally past customary grazing privileges were not to be suspended pending determination of these matters. It may be conceded for the purpose of this case, without so deciding, that pending determination of facts essential to issuance of a grazing permit that the Secretary of the Interior may adopt a rule or regulation covering the issuance of some form of temporary license or authority to continue grazing pending determination of the right to the issuance of a permit and the conditions thereof. The size and description of the "grazing unit" to be embraced in a "permit" is a matter to be determined by investigation of the land in question and is hardly a matter which may be covered by rule or regulation.

The determination of a "reasonable fee in each case" is clearly a matter which may not be covered by any general rule. Grazing areas vary materially in value. Twice the area in one section may be required to supply the same number of cattle or sheep than in another section some distance therefrom. The larger the area required for a given number of grazing stock may also affect the cost of herding and because of a larger area to be covered by the ranging stock may occasion some material difference in animal weight at the close of the grazing season. Manifestly it was for reasons of this character that

the statute provided for a determination of a "reasonable fee in each case." Assuming errors would not be made in the size of "grazing units," it would not follow that a rule establishing a fixed rate per head per grazing season for cattle or sheep for all grazing units in a dozen or more States would provide a "reasonable fee" for each grazing unit. It is clear, we think, that it could not do so.

While there is no express provision of the statute authorizing rules and regulations respecting fees to be charged for grazing privileges pending the issuance of permits, it is clear that if such fees may be charged they would be governed by a rule similar to that controlling in the case of grazing permits. The fees provided for in the rules herein in question are not so in accord and, hence, in the opinion of the Court the rules so providing are void. The following authorities are cited as supporting the conclusions reached: Ginsberg, Inc. v. Popkin, 285 U.S. 204, 52 S.Ct. 322, 76 L.Ed. 704; United States v. Johnson, D.C., 35 F.2d 256.

Defendant's motion to dismiss is granted.