### UNITED STATES v. FORBES.

### SAME v. HARTFORD ACCIDENT & INDEMNITY CO.

### Nos. 862, 863.

District Court, D. Montana.

Oct. 1, 1940.

John B. Tansil, U. S. Atty., of Billings, Mont., for plaintiff.

H. Leonard DeKalb, of Lewistown, Mont., for defendants.

PRAY, District Judge.

The above entitled causes were consolidated by agreement of counsel, and tried to the court without a jury.

These actions arise over a government oil and gas permit issued to defendant, J. F. Forbes, September 24th, 1920, and are brought by the plaintiff against the defendant Forbes and the defendant Indemnity Company to recover the cost incurred by the Government in plugging a well drilled upon lands included in the said permit.

The permit in question was issued under section 13 of the Mineral Leasing Act of February 25th, 1920, 30 U.S.C.A. § 221. A bond in the sum of $1,000 was executed by the defendant Indemnity Company guaranteeing the faithful performance of the terms of the permit. Extensions were granted defendant Forbes from time to time up to May 6th, 1928, to which the Indemnity Company gave written consent. A test well was drilled on lands embraced in the permit, described as the southeast quarter of Section 29, Township 16 North, Range 28 East, in Montana. The well was thereafter abandoned as a non-producer, flowing water, after being drilled to a depth of about 1,185 feet. Under an order to show cause served upon defendant Forbes June 3rd, 1927, the permit was cancelled.

The government contends that defendant Forbes never made any reports of any kind on the well in question, nor did he make report on any of the three wells drilled on his permit, and that he failed to comply with any of the operating regulations under the Act of February 25th, 1920, or of July 1st, 1926, or the regulations of April 23rd, 1928. That his excuse for failure to answer government letters and notices was that he had nothing to do with any of the wells, including the one in question, being drilled on his permit, although he referred to his diligent efforts in prosecuting the drilling of this particular well in his application for extension of September 23rd, 1922, and it appears that his contracts with the Consolidated Oil Company and others were made on the prospect and expectation of receiving this permit from the Government.

Federal officers, in performance of their duties, made numerous attempts to obtain reports from the defendant on the well in question but without avail; they demanded that he either take necessary steps to retain it as a water well or else properly abandon it by plugging; demands were made upon both Forbes and his surety to abandon the well by plugging. As no attention appears to have been paid to the government or its officers in this regard, a contract was let to D. F. Stouffer to plug the well, he being the lowest bidder, for which he was paid $2,825, the contract price; demand for repayment of this sum to the government was refused, and it is so admitted. When defendant applied for his permit under the Act of Congress aforesaid, he said: "it is my bona fide intention, if the permit I apply for is granted, to begin exploratory operations and continue same with diligence in accordance with approved methods and within the time and to the extent required by said act;" that he would carry out all reasonable orders of the Secretary of the Interior relative to prevention of waste and preservation of property, and would comply with such regulations as might be issued by the Secretary as to methods of operation. The Secretary

was authorized to adopt proper rules and regulations to carry out the purposes of the Act, and to grant permits under such rules and regulations as he might prescribe. 30 U.S.C.A. §§ 189 and 221.

The regulations adopted under the Act of February 25th, 1920, provide, among other things, that: "6. The lessee shall conform to the details of the letters and regulations and to the written instructions of the Supervisor and shall use all reasonable precautions, in accordance with the most approved methods, to prevent waste of oil or gas, damage to formations or deposits bearing oil, gas, or water or to coal measures or other mineral deposits, injury to life or property, or economic waste * *. 11. If the lessee shall fail to plug properly any dry or abandoned well the supervisor, after giving thirty days notice to the parties in interest, may plug such well at the expense of the lessee or his surety." These are only a few of the several specific requirements of the lessee found in the regulations, none of which he complied with. If there were manifest here an evident intent to comply, or an attempt at compliance, or a partial compliance which might have been deemed insufficient by the officer or officers whose duty it was to supervise these operations on the strength of reports received, perhaps a different problem would be presented for solution, but such is not the fact. Not only does this lack of compliance with the rules and regulations obtain in respect to the well in question, but the same is true of two other wells drilled under the same permit.

The principal defense here is that the rules and regulations sought to be enforced are not authorized under the statute, and that the charge contained in the complaint has not been established by proof.

From a plain reading of the complaint it is quite apparent that defendant failed to comply with the regulations prescribed by the Secretary of the Interior, and it is specifically set forth therein in what respect he failed to comply with such regulations, and the proof clearly establishes such noncompliance. The defendant agreed to carry out at his own expense all reasonable orders of the Secretary of the Interior relative to prevention of waste and preservation of property, and to comply with such regulations as might be adopted by the Secretary as to methods of operation. Defendant in substance claims that there was a failure of proof to show that there were

any oil bearing strata or oil bearing sands to be injured, and yet it appears in his application of September 23rd, 1922, for extension, he stated that there was a good showing of oil in the well, so that he might have brought in a producer if water had not come in to ruin it.

In this case it appears that traces of oil were found in the two Cat Creek sands, in the wells drilled under the permit in question, and that these were the same sands that were then producing oil in the Cat Creek field only twelve miles away. Several witnesses testified that it would be difficult to attempt to predict the migration of water in a sand and the damage that might result, and that proper precautions should be taken to plug wells before abandonment. How then can it be said that there were no oil bearing sands to be injured by the entrance of water. The brief filed by the learned gentlemen representing the defendant Forbes presents an able argument. The court has examined this brief with keen interest but is still unconvinced that the executive department has transgressed the rules laid down for the adoption and promulgation of rules and regulations under legislative authority in respect to the law in question, and especially the rules and regulations governing the state of facts here involved. It would seem that the statute itself has furnished a standard or criterion for the guidance of the proper officer in formulating regulations for the more effective administration of the Act; if the court is in error in this regard then here is presented the opportunity to settle definitely the legality of the rules and regulations under consideration, which have at times occasioned discord among prospectors for oil and gas when brought in contact with the representatives of the government, whose duty it has been to see that persons engaged in the oil and gas industry observe these statutory provisions and the regulations adopted thereunder. The chief difficulty with the defense is that the defendant never complied with any of the regulations, nor did he ever answer a letter or order coming from a governmental source in respect to his delinquencies during or subsequent to his drilling operations, or those of his agents, and in defense challenges the proof and the regulations for insufficiency and invalidity. Reference has been made to the decision of this court in the case of United States v. National Surety Co. (Wellington S. Towner), D.C., 34 F.Supp. 257, but the facts are so entirely

at variance with those existing in this case that the decision there would seem to be of little benefit to the defendants. In that case Towner and his agent or assignee made the required reports and later on abandoned the well by plugging it under the direction of a government supervisor or engineer, and sometime later the work done met with the disapproval of another supervisor who ordered the well re-plugged at government expense and brought an action against Towner to recover the amount; this well was not located within fifty miles of any proven oil field, and the defendant had fairly complied with the directions of the officer in charge, who appeared to be acting with due authority in the performance of his duties.

The government officer in charge wrote the defendant Forbes three times and endeavored to see him at Lewistown in an effort to mitigate loss by persuading him to adopt the well as a water well, which could have been done at slight expense, but he received no response; the officer even went further and requested neighbors to adopt the well as a water well but without success; evidently the officer did more than he was required to do in an effort to mitigate damages before advertising for bids to plug the well, so that, as it now appears to the court, defendant Forbes could have no just cause of complaint in that regard.

Counsel have cited many interesting cases relating to the delegation of power to adopt rules and regulations not inconsistent with the policy outlined in the legislative act, and the court is in agreement with the rules laid down—most of them being well known to courts and lawyers, but nowhere has this court been able to find sufficient authority to warrant placing the mark of invalidity against any of the rules and regulations adopted under the law in question by the Secretary of the Interior and applicable to the case at hand.

The rule in question is well expressed in United States v. Achabal, D.C., 34 F.Supp. 1, 3, as follows: "The law is well settled that where a statute is enacted to effect a certain major purpose of public interest within the general control of a particular public official or Department of Government and such statute authorizes such official to make rules and regulations to aid in carrying out the purposes of the statute, that such rules and regulations to be valid must be in accordance with the provisions of the statute, subordinate to its provisions and not in conflict therewith."

Taking into account the evidence submitted, his application, permit, bond and the statutes and regulations in force, the conclusion seems inevitable, that the defendant has been shown to be liable according to the contentions of the government, and that judgment should be awarded accordingly with costs, and it is so ordered.

Findings of ultimate facts and conclusions may be submitted, to conform to the views herein expressed.